WORTH ET AL., APPELLANTS, *v.* AETNA CASUALTY & SURETY CO. ET AL., APPELLEES.

[Cite as Worth *v.* Aetna Cas. & Sur. Co. (1987), 32 Ohio St. 3d 238.]

(No. 86-450—Decided September 2, 1987.)

*Schneider, Smeltz, Huston & Ranney, James I. Huston* and *Danny R. Williams,* for appellants.

*Walter, Haverfield, Buescher & Chockley, James E. Betts, Michael T. McMenamin* and *Victor J. Leo,* for appellees.

PATTON, J. Although the appellant-executives have raised several propositions of law, the central issue presented in this case is whether the courts below erred in concluding that the enforcement clause of appellants' Employment Agreements was void as against Ohio's public policy. For the reasons that follow, we conclude that such clauses are enforceable and are not contrary to Ohio's public policy.

Union Commerce entered into Employment Agreements with the appellants in an effort to retain their services as two key executives pending a possible change of control. Section 5 of the Employment Agreements, captioned "Enforcement Costs," recognized that a successor company may not comply with its obligations under these agreements:

"The Company [Union Commerce] is aware that upon the occurrence of a change in control the Board of Directors or a stockholder of the Company may then cause or attempt to cause the Company to refuse to comply with its obligations under this Agreement, or may cause or attempt to cause the Company to institute, or may institute, litigation seeking to have this Agreement declared unenforceable, or may take, or attempt to take, other action to deny Employee the benefits intended under this Agreement. In these circumstances, the purpose of this Agreement could be frustrated. It is the intent of the Company that Employee not be required to incur the expenses associated with the enforcement of his rights under this Agreement by litigation or other legal action because the cost and expense thereof would substantially detract from the benefits intended to be extended to Employee hereunder, nor be bound to negotiate any settlement of his rights hereunder under threat of incurring such expenses."

To alleviate this possible situation, the Employment Agreements further provided:

"Accordingly, if following a change in control it should appear to Employee that the Company has failed to comply with any of its obligations under this Agreement or in the event that the Company or any other person

takes any action to declare this Agreement void or unenforceable, or institutes any litigation or other legal action designed to deny, diminish or to recover from, Employee the benefits intended to be provided to Employee hereunder, and that Employee has complied with all of his obligations under this Agreement, the Company irrevocably authorizes Employee from time to time to retain counsel of his choice at the expense of the Company as provided in this Section 5, to represent Employee in connection with the initiation or defense of any litigation or other legal action, whether by or against the Company or any Director, officer, stockholder or other person affiliated with the Company, in any jurisdiction. * * * The reasonable fees and expenses of counsel selected from time to time by Employee as hereinabove provided shall be paid or reimbursed to Employee by the Company on a regular, periodic basis upon presentation by Employee of a statement or statements prepared by such counsel in accordance with its customary practices, up to a maximum aggregate amount of $500,000.''

As noted previously, Union Commerce purchased a surety bond from Aetna in lieu of the irrevocable standby letter of credit authorized by Section 6 of the Employment Agreements. If the employer failed to pay the executives their qualified legal expenses, Aetna, as surety, was obligated to reimburse the executives for legal fees incurred in attempting to enforce their Employment Agreements up to a maximum aggregate amount of $500,000.

By their terms, these agreements provided that if Huntington failed to honor the terms of the Employment Agreements after the change in control, the affected executives could proceed to seek legal counsel to enforce those agreements. The executives would be reimbursed for their legal expenses and thus would be saved harmless. If these controverted provisions establish an indemnity relationship as the appellants contend, then the question is whether such clauses are enforceable, therefore entitling the appellants to recover their qualified legal expenses.[1]

Indemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement. *Travelers Indemnity Co.* v. *Trowbridge* (1975), 41 Ohio St. 2d 11, 70 O.O. 2d 6, 321 N.E. 2d 787, paragraph two of the syllabus. In general, to indemnify is to make whole and has been defined to mean to save harmless by giving security for the reimbursement of a person in case of anticipated loss, as by execution and delivery of a bond. See, generally, 41 American Jurisprudence 2d (1968) 687, Indemnity, Section 1.

The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used. See *Cleveland Window Glass & Door Co.* v. *National Surety Co.* (1928), 118 Ohio St. 414, 161 N.E. 280. All words used must be taken in their ordinary and popular sense, *Glaspell* v. *Ohio Edison Co.* (1987), 29 Ohio St. 3d 44, 47, 29 OBR 393, 396, 505 N.E. 2d 264, 267, and "[w]hen a * * * [writing] is worded in clear and precise terms; when its meaning is evi-

---

[1] Our inquiry in this case is limited to the issue of whether the "Enforcement Costs" provision of the executives' Employment Agreements is enforceable. We do not address, and we express no opinion on, the broader question of whether the executives' Employment Agreements as a whole are enforceable.

dent, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which * * * [it] naturally presents." *Lawler* v. *Burt* (1857), 7 Ohio St. 340, 350.

When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified instances, and it is determined that the exceptions do not pertain, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement. *Allen* v. *Standard Oil Co.* (1982), 2 Ohio St. 3d 122, 2 OBR 671, 443 N.E. 2d 497, paragraph one of the syllabus. For example, in *Glaspell, supra,* we held that when the subject of liability is anticipated in an enforceable indemnity agreement, such indemnification must be provided. *Id.* at paragraph two of the syllabus. In *Glaspell,* United Telephone Company and Ohio Edison Company ("the appellants") entered into an indemnity agreement with Mahoning Valley Cablevision, Inc. ("appellee") in which the appellants granted to appellee a right to use appellants' facilities and, in exchange, appellee was obligated to bear all risk of additional harm which might occur in connection with appellee's right of access. Thus, in the event of certain specified contingencies as contemplated by the parties when they drafted the indemnity agreement, the appellee would be responsible for this additional risk of harm. We noted in *Glaspell* that the indemnity agreement was "assented to in a context of free and understanding negotiation." *Id.* at 47, 29 OBR at 396, 505 N.E. 2d at 266.

The agreements at issue in the instant case are likewise resolvable by their own terms, and we find the meaning and import of the controverted clauses to be an unambiguous indemnity agreement. The absence of an express "indemnification" provision in the agreements is not determinative since the nature of a given provision is determined not by the label the parties give it, but rather by the legal effect of the provision as expressed by the parties in their agreement. See *Bell* v. *Dimmerling* (1948), 149 Ohio St. 165, 168, 36 O.O. 505, 506, 78 N.E. 2d 49, 51. The intent of the parties as expressed in the agreements in this case was to retain key executives during and following a change in control. They further intended to provide the executives with security in the event the successor company failed to honor the terms of the Employment Agreements either by diminishing the executives' employment status or terminating their employment altogether. Under such circumstances, the executives were authorized to retain legal counsel and were to be held harmless and made whole for costs incurred up to a limited amount. There is nothing to suggest that these agreements were negotiated in any context other than one of free and understanding negotiation. Since the subject of holding the executives harmless regarding such legal expenses was specifically anticipated in the indemnity clauses, such indemnification must be provided to appellants as long as the provision is enforceable.

Certain kinds of indemnity agreements are forbidden under Ohio law. See, *e.g.,* R.C. 2305.31 and *Kendall* v. *U.S. Dismantling Co.* (1985), 20 Ohio St. 3d 61, 20 OBR 360, 485 N.E. 2d 1047 (construction contracts); R.C. 4123.82 and *Ledex, Inc.* v. *Heatbath Corp.* (1984), 10 Ohio St. 3d 126, 10 OBR 449, 461 N.E 2d 1299 (workers' compensation benefits); *Cumpston* v. *Lambert* (1849), 18 Ohio 81 (illegal agreements). In the absence of specific public policy exceptions, however, an agreement to indemnify another is generally enforceable. See, *e.g., Allen* v. *Standard Oil Co., supra.*

In *Allen, supra,* an indemnity agreement was entered into between the indemnitor, Refiners Transport & Terminal Corporation ("Refiners"), and the indemnitee, Standard Oil Company ("Sohio"). Refiners agreed to indemnify Sohio for liabilities sustained by Sohio as a result of acts or omissions by Refiners except in certain specified instances. The plaintiff, Allen, an employee of Refiners, was injured on the premises of Sohio. Allen subsequently brought a negligence action against Sohio, and Refiners refused to honor the terms of its indemnity agreement with Sohio. After holding that the indemnitor, Refiners, was legally obligated to indemnify the indemnitee, Sohio, under the terms of the agreement, the court further held:

"When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, *including attorney fees and expenses,* incurred by the indemnitee in defending the initial action and in vindicating its rights to indemnity in a third-party action brought against the indemnitor." (Emphasis added.) *Id.* at paragraph two of syllabus.

The underlying rationale of our decision in *Allen* was that where a party agrees to hold another harmless, the party seeking to enforce the terms of the indemnity agreement may be made whole by proceeding against the party who failed to abide by the terms of the agreement, and such recovery may include attorney fees.

We can see no reason why an indemnity agreement which expressly allows for the recovery of attorney fees should be treated any differently from the indemnity agreement in *Allen* which did not expressly allow for the recovery of such expenses, but which was, nevertheless, held to allow for such recovery. In both cases, the indemnitor's alleged wrongful refusal to honor its obligations caused the indemnitee to incur legal expenses in order to vindicate its right to indemnity. Accordingly, we hold that an indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and is not contrary to Ohio's public policy. In the event that the indemnitor wrongfully refuses to honor its obligation, the indemnitee may recover its legal expenses.

The appellees maintain that the agreement to reimburse appellants for their legal expenses contravenes Ohio's long-standing public policy that stipulations to pay attorney fees in an action for breach of contract are void and hence unenforceable. See *State* v. *Taylor* (1841), 10 Ohio 378; *Shelton* v. *Gill* (1842), 11 Ohio 417; *Martin* v. *Trustees of Bank of St. Clairsville* (1844), 13 Ohio 250; *Leavans* v. *Bank* (1893), 50 Ohio St. 591, 34 N.E. 1089. In *Miller* v. *Kyle* (1911), 85 Ohio St. 186, 97 N.E. 372, this court reaffirmed that Ohio's public policy forbids contracts for the payment of counsel fees upon default in payment of a debt obligation. Appellees claim that the enforcement clause provision in the instant case is equivalent to a contract to pay attorney fees upon default of a debt obligation. We do not agree with appellees' characterization of this indemnity agreement.

When a stipulation to pay attorney fees is incorporated into an ordinary contract, lease, note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obliga-

tion. In those circumstances, the promise to pay counsel fees is not arrived at through free and understanding negotiation.

In contrast, the indemnity agreements at issue in the instant case present a circumstance in which it is in the interest of both the executives and the employer for the executives to enforce the terms of their Employment Agreements. It was in the executives' interest to have the means to enforce their employment contracts. It was in Union Commerce's interest to retain qualified personnel during and following a change of control and to provide its executives with security by giving them the means to vindicate their rights under the contracts. Through free and understanding negotiation, both the executives and the employer were able to protect their respective interests. The fact that this indemnity agreement was assented to in this context distinguishes this case from the ordinary stipulation to pay attorney fees for breach of a debt obligation. This is not a situation of a one-sided attorney fees provision or one of imbalance, but one of making the indemnified parties whole. Consequently, our decision today leaves undisturbed our holding in *Miller* v. *Kyle, supra,* and like cases.

We are mindful that the agreement to indemnify these executives for their qualified legal expenses must be considered in its proper perspective.

The Board of Directors of Union Commerce recognized the contribution of its key executives, but also anticipated possible turmoil during a change in control which would leave the executives' employment status uncertain. In exchange for the executives' continued commitment, the board acknowledged that the executives must have the practical means to enforce the terms of their Employment Agreements. To provide the executives with this security, the board elected to indemnify the executives for qualified legal expenses incurred in attempting to enforce these agreements. Under these circumstances, a court will not inquire into the wisdom of actions taken by a board of directors in the absence of fraud, bad faith or an unreasonable exercise of discretion. See *Wilberding* v. *Miller* (1914), 90 Ohio St. 28, 42, 106 N.E. 665, 669.

Thus, the agreement to indemnify appellants for their qualified legal fees is enforceable and not contrary to Ohio's public policy. Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

Moyer, C.J., Locher, Holmes, Douglas, Wright and H. Brown, JJ., concur.

Patton, J., of the Eighth Appellate District, sitting for Sweeney, J.