## Centennial Ins. Co.
### v.
## Cincinnati Ins. Co.
[Cite as 8 AOA 475]

Case No. 90AP-352
Franklin County, (10th)
Decided November 29, 1990

*Thomas D. Hunter and Gwenn S. Karr, Hunter & Enders, for Appellee.*

*Theodore M. Munsell and Patrick H. Boggs, Lane, Alton & Horst, for Appellant.*

BOWMAN, J.

On December 30, 1982, Milton Pinsky/ Pinsky Publishing and Printing Company ("Pinsky"), entered into a lease agreement with Richard E. Cooley and Kathleen Cooley, doing business as Creditors Service Corporation ("CSC"), to lease two thousand four hundred ninety square feet of space at 2831 East Main Street, Columbus, Ohio, defined in the lease agreement as "the premises."

In September 1985, two of Pinsky's employees, Joyce Reisinger and Camala Aydelotte, filed a cause of action against the lessor, CSC, for personal injuries they allegedly sustained arising from exposure to carbon monoxide which leaked from a gas hot water heater located in the basement of the property located at 2831 East Main Street. The hot water heater, which allegedly leaked and caused these women's injuries, was located in an area of the building which was not leased to Pinsky.

Appellant, the Cincinnati Insurance Company ("Cincinnati"), was called by CSC, its insured, to defend the civil action brought by Reisinger and Aydelotte. Cincinnati appeared and defended; however, based upon the lease agreement, Cincinnati tendered the defense in the civil action to Pinsky demanding that Pinsky assume the defense and hold CSC harmless. Appellee, Centennial Insurance Company ("Centennial"), acting on behalf of its insured, Pinsky, responded to this demand and agreed to enter an appearance, assume the defense and indemnify CSC. Thereafter, Centennial was substituted as counsel for Cincinnati in the civil action. On December 11, 1987, Centennial retendered the defense of the civil action to Cincinnati; however, on December 30, 1987, Cincinnati refused to accept the retender of the defense.

On May 9, 1988, the civil action proceeded to trial and, throughout the course of the trial, a settlement was pursued. At that time, Centennial asked Cincinnati to contribute toward the settlement of the lawsuit. On May 13, 1988, Reisinger and Aydelotte agreed to accept a settlement proposal which included a contribution of $28,750 by Centennial and a contribution of $28,750 by Cincinnati. These payments were made and exchanged for an entry dismissing the case with prejudice and a release of all claims which Reisinger and Aydelotte had against any party to the action or their insurers. By prior agreement, Cincinnati and Centennial reserved and retained the right to litigate between themselves the rights, duties and obligations of the insurers, as well as which of them had the ultimate obligation to pay on behalf of their respective insureds.

Thereafter, Centennial filed the instant cause of action against Cincinnati for declaratory judgment to determine and declare the rights and obligations of the parties and their insureds arising from the written lease agreement between the parties' insureds. More

particularly, the action was to determine whether Centennial and its insured, Pinsky, was liable to indemnify Richard Cooley, Kathleen Cooley and CSC, or whether Cincinnati and its insured, CSC, was liable to indemnify Pinsky for any claims for losses, injuries or damages made in the civil lawsuit brought by Reisinger and Aydelotte.

Because the facts in the case were undisputed, the parties filed a written stipulation of facts and issues presented for determination and included a copy of the lease agreement signed by Pinsky and CSC. The issues presented to the trial court turned on whether two provisions in the lease agreement, the indemnification of landlord and waiver of liability clauses, were valid and enforceable against Pinsky.

On January 12, 1990, the trial court rendered its decision and found that the indemnification clause in the lease was against public policy and was not to be enforced. The court found that CSC had an affirmative duty to repair and maintain the premises so that it was safe for its intended use and, because CSC failed to do this, it was liable. Because Cincinnati was the insurer of CSC, the court found that it was also liable for CSC's negligence. The court held that neither Centennial nor Pinsky had a duty to defend or indemnify CSC or Cincinnati in the underlying case and that Cincinnati was to indemnify Centennial for the amount contributed in settlement of the underlying case in the amount of $28,750. Appellant now brings this appeal and asserts the following assignments of error:

"I. THE TRIAL COURT ERRED WHEN IT MADE FINDINGS OF FACT WHICH ARE BEYOND THE SCOPE OF THE STIPULATED FACTS SUBMITTED BY THE PARTIES.

"II. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE INDEMNIFICATION PROVISION CONTAINED IN THE LEASE AGREEMENT BETWEEN THE PARTIES' INSUREDS IS VOID AS AGAINST PUBLIC POLICY.

"III. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE WAIVER OF LIABILITY PROVISION CONTAINED IN THE LEASE AGREEMENT BETWEEN THE PARTIES' INSUREDS HAS NO RELE-

VANCE AND IS INAPPLICABLE TO PLAINTIFF-APPELLEE'S REQUEST FOR REIMBURSEMENT."

Appellant's second and third assignments of error are related and dispositive of the issues raised on appeal and will be considered together. In these assignments of error, appellant asserts that the trial court erred when it utilized facts beyond the scope of the stipulated facts in determining that the indemnification provision of the lease agreement was void against public policy and that the waiver of liability provision contained in the lease agreement was inapplicable and not relevant to the issues. Although appellant has raised several propositions of law, the central issue presented in this case is whether the trial court erred in concluding that the indemnity provision in the lease agreement was void against Ohio public policy.

The lease in question provides:

"§14. *Indemnification of Landlord.*

"Tenant shall indemnify Landlord and save it harmless from and against *** actions, damages, liability and expenses in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in, upon or at the Premises, or any part thereof, or occasioned wholly or in part by any act or omission of the Tenant, its agents, contractors, employees, servants, lessees or concessionaires. In case Landlord shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, then Tenant shall protect and hold Landlord harmless and shall pay all costs and expenses incurred or paid by Landlord in connection with such litigation.

"§15. *Waiver of Liability.*

"Landlord shall not be liable for any damage or injury to person or property of Tenant, its officers, employees, agents, licensees or invitees, due to fire, accident, lack of repair or otherwise, in or about the Premises, the building or common area."

Ohio law permits the enforcement of indemnity agreements. See *Allen v. Standard Oil Co.* (1982), 2 Ohio St. 3d 122, paragraph one of the syllabus. In *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St. 3d 44, the court held, at paragraph one the syllabus:

"While clauses limiting the liability of the drafter are ordinarily to be strictly construed, such strict construction need not be applied in the interpretation of an indemnifi-

cation agreement entered into between business entities in a context of free and understanding negotiation."

The court noted that the parties involved in the case were commercial enterprises of sufficient size and character that they could be presumed to possess a high degree of sophistication in matters of contract. As such, the parties entered into a freely negotiated agreement allocating the burden of additional risk among themselves.

In *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St. 3d 238, the court stated that indemnity arises from contract, and when a contract is freely negotiated and understood by each party, there is nothing to suggest that the agreement is not enforceable. The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used in the agreement. All words used in the agreement must ne taken in their ordinary and popular sense, and when a writing is worded in clear and precise terms and its meaning is evident and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which it naturally possesses. See *Lawler v. Burt* (1857), 7 Ohio St. 340. When a party to an agreement expressly agrees to indemnify the other party, except in certain specified instances, and it is determined that the exceptions do not apply, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement.

In this case, Pinsky and CSC entered into a freely negotiated lease agreement whereby Pinsky leased space from CSC for his printing business. As part of the negotiated lease agreement, Pinsky agreed to indemnify CSC and save it harmless from and against any and all claims in certain situations. In addition, Pinsky agreed that CSC would not be liable for any damage or injury to Pinsky's employees. As the court stated in *Brookridge Party Center, Inc. v. Fisher Foods, Inc.* (1983), 12 Ohio App. 3d 130, at 133:

"*** [I]ndemnity agreements are becoming commonplace for numerous commercial transactions, including commercial leases. Such agreements serve a function similar to fire loss provisions. They seek to assign anticipatable risks of loss to one or both parties, for commercial convenience in allocating transaction costs. The party who accepts a risk can then obtain insurance protec-tion against that potential loss, or undertake the status of a self-insurer."

Pinsky and CSC allocated risks among themselves and, as a result of that allocation of risks, both CSC and Pinsky insured themselves.

Because the lease agreement was fairly negotiated between CSC and Pinsky, this court finds that the indemnification provision of the lease agreement is valid and enforceable. As such, the trial court erred when it determined that the indemnity provision was void against public policy and appellant's second and third assignments of error are sustained.

As to appellant's first assignment of error, we find that the trial court did make findings beyond the scope of the stipulated facts. The matter was presented to the trial court to determine whether Centennial or Cincinnati and/or its insured had a duty to defend and indemnify the other party for that portion of the settlement paid by the other party. The trial court was not asked to determine the issue of negligence and insufficient facts were provided to the trial court to make the findings it did make as to negligence. Therefore, appellant's first assignment of error is sustained.

For the foregoing reasons, appellant's first, second and third assignments of error are sustained and the judgment of the trial court is reversed and this cause is remanded to the trial court which, on remand, should only consider the stipulated facts before it in reaching its determination as to which insurance carrier has a duty to provide a defense and indemnify the other insurance carrier for the settlement reached in the underlying civil action.

*Judgment reversed and
cause remanded.*

STRAUSBAUGH and BRYANT, J.J., concur.