42 F.3d 1389
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RUBBERMAID, INC., Plaintiff-Appellee, Cross-Appellant,
v.
MASSEY CONSTRUCTION, INC., d/b/a Massey Electric Co.;
Rentenbach Engineering Co.; City of Maryville;
Campbell & Associates d/b/a
Campbell-Daves & Associates; Defendants,
Westinghouse Electric Corp., Defendant-Appellant, Cross-Appellee,
 Nos. 93-6014, 93-31.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1994.
 
 Before: KENNEDY and SUHRHEINRICH, Circuit Judges; and ZATKOFF,* District Judge.
 PER CURIAM.
 
 
 1
 This case arises from a malfunctioning switchgear purchased by plaintiff, Rubbermaid, Inc., from defendant Westinghouse Electric Corporation. A jury found that the malfunction was attributable to Westinghouse. Westinghouse appeals this determination, arguing that Rubbermaid failed to present sufficient evidence to support the verdict. Rubbermaid seeks attorney's fees from Westinghouse pursuant to a contract between the two parties. The District Court denied attorney's fees, and Rubbermaid cross-appeals that determination. We affirm the District Court on both issues.
 
 I.
 
 2
 In 1988, Rubbermaid hired a contractor to implement plans to build a plant in Maryville, Tennessee. The contractor subcontracted the electrical construction and installation work to Massey Construction. The plant required a device known as a switchgear, so Rubbermaid accepted bids and elected to purchase the switchgear from Westinghouse Electric Corporation.
 
 
 3
 In February 1989, after the switchgear was installed, an arcing incident occurred in the conduit carrying the cables connecting the City of Maryville's transformer to the Westinghouse switchgear. As a result of this incident, smoke and soot settled inside the switchgear cabinets. This accumulation prevented proper functioning of the switchgear. At Rubbermaid's request, an expert from Westinghouse examined the switchgear and determined that the damage could be rectified by cleaning the equipment, rather than replacing various parts. Employees of Massey did the actual cleaning.
 
 
 4
 On July 4, 1989, a second arcing incident occurred. This incident caused extensive damage to the switchgear. Rubbermaid filed suit against both Massey and Westinghouse, seeking to hold either or both companies liable for the damage. A jury found Westinghouse, but not Massey, liable for the incident. After trial, Rubbermaid moved for an award of attorney's fees based on language in the purchase order between Rubbermaid and Westinghouse. The District Court refused to award the fees. Both Westinghouse and Rubbermaid appeal.
 
 II.
 A. Testimony Regarding Proximate Cause
 
 5
 Westinghouse argues that the District Court improperly submitted the case to the jury. According to Westinghouse, Rubbermaid's evidence demonstrated that the arcing incident resulted from one of two causes, both of which were equally likely. Westinghouse contends that Rubbermaid did not present any evidence from which the jury could rationally choose between the two theories and that the District Court thus erred in submitting the case to the jury. Westinghouse also contends that the jury's verdict was not supported by a preponderance of the evidence.
 
 
 6
 Rubbermaid's tort action is governed by Tennessee law, so we look to Tennessee law in resolving this issue. In Tennessee, as in most jurisdictions, a case should not be submitted to a jury unless the plaintiff has presented the jury with sufficient evidence to permit it to rationally choose between competing theories. Silcox v. Smith County, 487 S.W.2d 652, 654 (Tenn.Ct.App.1972). While the jury's decision does not have to be free of doubt and uncertainty, it must be supported by a preponderance of the evidence; "no recovery can be had if the evidence leaves it to conjecture which of two probable causes resulted in injury, where the defendant was liable for only one of them." Id. (quoting Brown v. Hudson, 363 S.W.2d 505 (Tenn.Ct.App.1962)).
 
 
 7
 At trial, Rubbermaid offered the testimony of Roger Landers, an expert in investigating electrical fires and their causes. According to Landers, the fire resulted from soot contamination on the back side of the insulation barrier inside the switchgear cabinet. Landers also testified that the contamination arose from one of two sources: either Westinghouse erred in opining that the switchgear could be cleaned after the first arcing incident or Massey did not clean the equipment properly. The question, then, becomes whether Rubbermaid offered the jury any basis for choosing between these two possible options. A review of the evidence reveals that it did.
 
 
 8
 Landers twice testified that if Massey cleaned the equipment the way it said, then the problem was an error in judgment by Westinghouse as to whether the switchgear could be cleaned. This testimony is sufficient to tip the balance toward the theory that Westinghouse erred in opining that the switchgear could be cleaned. If the jury found Massey's employees credible and believed their testimony, it could then use Landers' testimony to conclude that Westinghouse erred. We therefore decline to overturn the jury's verdict.
 
 B. Landers' Qualifications
 
 9
 Westinghouse argues that Landers himself testified that he was not qualified to render an opinion as to whether the switchgear was capable of being cleaned after the first arcing incident. Thus, according to Westinghouse, the District Court should not have Landers testify on that issue.
 
 
 10
 Westinghouse's argument misunderstands what occurred below. Landers never testified that the switchgear could or could not be cleaned. Indeed, he stated that was a decision that had to be made by someone with specialized training, which he lacked. Landers was, however, qualified to determine whether Massey had used a proper procedure to clean the equipment. Landers did not need to be an expert in the "cleanability" of the switchgear to make this determination. Thus, the District Court did not err in admitting his testimony.
 
 C. Attorney's Fees
 
 11
 Paragraph eight of the purchase order between Rubbermaid and Westinghouse states:
 
 
 12
 Seller expressly warrants that the goods covered by this order are of merchantable quality and fit and safe for intended use. All goods shall conform in all respects to samples, if any, previously furnished to and approved by buyer. Acceptance of this order shall constitute an agreement upon seller's part to defend and indemnify buyer and hold it harmless from all claims, liability, loss, damage, and expense, including reasonable counsel fees, incurred or sustained by buyer because of failure of the goods to conform to such warranties or because of the negligence of seller, its agents and employees or of third parties, such indemnities shall be in addition to any other remedies provided by law.
 
 
 13
 After trial, Rubbermaid moved for attorney's fees under this clause. The District Court refused to award fees, holding that "[t]his contractual language would indemnify Rubbermaid from all liability and attorney fees, etc. in the event a third party sued Rubbermaid over something to do with the Westinghouse switchgear." Rubbermaid appeals this determination.
 
 
 14
 By the terms of the contract, Ohio law governs this dispute. In Ohio,
 
 
 15
 The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used.... All words used must be taken in their ordinary and popular sense, ... and "[w]hen a ... [writing] is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which ... [it] naturally presents."
 
 
 16
 Worth v. Aetna Cas. & Surety Co., 513 N.E.2d 253, 256 (Ohio 1987) (citations omitted).
 
 
 17
 The district court's interpretation is correct. The contract here uses the phrase "defend and indemnify". This is the standard phrase used in insurance contracts, where it refers to the duty of an insurer to pay for the legal representation of its insured when a suit is brought against the insured concerning an issue covered by the policy. The use of this same phrase in the purchase order has the same meaning and effect.
 
 
 18
 Rubbermaid cites two cases in support of its argument that no third party claim is required to activate this clause: Worth, 513 N.E.2d 253 and Standard Oil Co. v. Ogden & Moffett Co., 242 F.2d 287 (6th Cir.1957). Both these cases are inapposite because the pertinent contractual language is not analogous to the "defend and indemnify" language used in the present contract. The clauses in Worth and Standard Oil clearly anticipate the possibility of a suit between the parties to the contract. The same cannot be said of the clause in the purchase order at bar.
 
 III.
 
 19
 For the foregoing reasons, we AFFIRM the judgment of the District Court.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation