PORTSMOUTH INSURANCE AGENCY, Appellee,

v.

MEDICAL MUTUAL OF OHIO, Appellant.

[Cite as *Portsmouth Ins. Agency v. Med. Mut. of Ohio,* 188 Ohio App.3d 111, 2009-Ohio-941.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 08CA3218.

Decided Feb. 24, 2009.

David L. Day, for appellee.

David J. Wigham, John H. Schaeffer, and Andrew P. Lycans, for appellant.

PETER B. ABELE, Judge.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court summary judgment in favor of Portsmouth Insurance Agency, plaintiff-appellee. The trial court determined that appellee did not have any obligation to indemnify Medical Mutual of Ohio, defendant-appellant, under an indemnity provision contained in appellee's agency contract with appellant.

{¶ 2} Appellant raises the following assignment of error for review:

The trial court erred in granting summary judgment in favor of Portsmouth Insurance Agency and against Medical Mutual of Ohio.

This case involves an indemnity dispute between appellant, an insurance company, and appellee, one of appellant's agencies, that arises out of a prior lawsuit that Luther and Donna Alley instituted against appellant, appellee, and Todd Skaggs, one of appellee's insurance agents. Appellant and appellee entered into an agency agreement that contained the following indemnity provision:

The Agent agrees to indemnify and save [appellant] harmless from all loss, expense, cost and liability resulting from unauthorized acts or transactions by said Agent or any other persons engaged or acting on the Agent's behalf.

In the prior lawsuit, the Alleys alleged that in December 2001, Skaggs completed an application for health-insurance coverage with appellant. After reviewing the application, appellant agreed to provide coverage to the Alleys. In February 2004, however, appellant terminated the Alleys' coverage, retroactive to January 1, 2002. Appellant took this action because of alleged misrepresentations in the health-insurance application. Appellant asserts that Skaggs did not provide correct information in the application regarding the Alleys' health conditions. The Alleys claimed that they completely disclosed their health conditions to Skaggs, but that Skaggs failed to accurately complete the application.

{¶ 3} In their complaint, the Alleys alleged that after appellant terminated their coverage, the Alleys requested that appellant question appellee or Skaggs concerning the information they provided to Skaggs. Appellant responded that Skaggs no longer worked as their agent. The Alleys then claimed that appellant (1) did nothing to confirm that they truthfully advised Skaggs of their medical background and history, (2) attempted to return $14,935.59 to the Alleys' premi-

um refund and contacted the Alleys' medical providers to demand that they return the payments made for medical services provided to the Alleys, and (3) knew that Skaggs completed the Alleys' insurance application and that the Alleys did not make any willful or fraudulent misstatements regarding their application.

{¶ 4} Consequently, based upon these facts, the Alleys sought a declaratory judgment and asserted several causes of action against appellant: (1) fraud, (2) breach of contract, (3) false light, (4) breach of contract/bad faith, and (5) bad faith/tortious conduct. The Alleys also asserted several causes of action against appellee: (1) negligence, (2) breach of fiduciary duty, and (3) fraud. The Alleys further asserted the following causes of action against Skaggs: (1) negligence, (2) breach of fiduciary duty, and (3) fraud.

{¶ 5} Appellant brought a cross-claim in the Alley litigation against appellee and Skaggs and sought indemnification. Appellant alleged that it "was forced to defend a lawsuit that would not have occurred, if [appellee] had properly instructed the Alleys to fully and accurately complete to the [sic] entire medical health questionnaire and application."

{¶ 6} Eventually, appellant notified appellee that it intended to settle the matter with the Alleys and demanded that appellee indemnify it. Appellant's letter stated that if appellee did not respond on or before March 19, 2007, appellant would proceed to execute the settlement agreement with the Alleys and look to appellee for recovery. Appellee did not respond. Appellant then settled with the Alleys for $70,000. On March 15, 2007, appellee filed a complaint for declaratory judgment against appellant and requested the court to declare the parties' rights and obligations under the agency agreement's indemnity provision.

{¶ 7} On April 13, 2007, before appellant filed its answer, appellee requested summary judgment and asserted that the Alleys' claims against appellant did not fall within the scope of the indemnity provision. Appellee argued that the causes of action all focused upon appellant's independent conduct, not appellee's or Skaggs' conduct for which appellant could be held vicariously liable. Appellee claimed that the causes of action were based upon appellant's "knowing and intentional conduct" and that indemnification is not available for intentional conduct.

{¶ 8} Appellant's memorandum contra asserted that it is entitled to be indemnified for damages paid to settle the Alleys' lawsuit because (1) it provided proper notice, (2) it is liable for the settled claims, and (3) the settlement is fair and reasonable. Appellant disputed appellee's claim that the Alleys asserted independent acts of negligence against appellant; rather, appellant asserted that all of the causes of action arose from appellee's agent's alleged misconduct. Thus, appellant argued that it was only vicariously liable for the Alleys' claims.

{¶ 9} The trial court overruled appellee's summary-judgment motion and determined that genuine issues of material fact remained. Appellant then answered and asserted a counterclaim for breach of the agency agreement.

{¶ 10} Subsequently, appellee filed a second summary-judgment motion. Appellee pointed out that since it filed the previous motion, it had settled the case with the Alleys. Appellee reiterated that the Alleys' causes of action against appellant did not fall within the scope of the indemnity provision. Rather, appellee asserted that the claims appellant settled with the Alleys related to appellant's own conduct in unilaterally terminating the insurance contract and that appellant did not settle any of the claims the Alleys asserted against appellee or Skaggs. Thus, appellee maintained that appellant could not use the indemnity provision to seek indemnity for its own intentional misconduct.

{¶ 11} In its memorandum contra, appellant noted that the trial court had denied appellee's earlier summary-judgment motion and that appellee's second motion raised no new issues.

{¶ 12} On January 18, 2008, the trial court granted appellee's summary-judgment request and determined that appellee had no obligation to hold appellant harmless, to reimburse or to indemnify appellant. Although the court did not provide specific reasons in its written decision, at an oral hearing the court stated that "it is inherently unfair for [appellant] to settle a case for which they are potentially liable and then to go back and tell [appellee] to pay us back." The court also stated that because the parties settled the claims with the Alleys, the court could not determine the parties' actual liability so as to ascertain whether appellant is entitled to indemnity. This appeal followed.

{¶ 13} In its sole assignment of error, appellant asserts that genuine issues of material fact remain regarding appellee's indemnity obligation. Appellee argues that because appellant and appellee settled the issues in the Alley case, appellant is precluded from seeking indemnification. Appellee further claims that this controversy does not present a case in which a party secondarily liable seeks indemnification from a party primarily liable, but, instead, involves two primarily liable parties.

### A

### STANDARD OF REVIEW

{¶ 14} Appellate courts review summary-judgment decisions de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine whether summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary-judgment decisions. See *Brown v. Scioto Cty. Bd.*

*of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786. Thus, to determine whether a trial court properly determined summary judgment, an appellate court must review the Civ.R. 56 summary-judgment standard as well as the applicable law.

{¶ 15} Civ.R. 56(C) provides:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164.

B

INDEMNITY

{¶ 16} "Indemnity shifts the entire loss from one who has been compelled to make payment to the plaintiff to another who is deemed responsible for reimbursing the full amount. The right to indemnity exists when the relationship between the parties requires one to bear the loss for the other. This right may arise from common law, contract, or in some cases, statutes. When a judgment is obtained against the indemnitee, an indemnitor who has been given proper notice and an opportunity to defend the action falls in that class of non-parties who are bound by the outcome." (Citations omitted.) *Blair v. Mann* (Apr. 8, 1999), Lawrence App. No. 98CA35, 1999 WL 228265.

{¶ 17} In the case at bar, appellant contends that its right to indemnity arises from contract. Thus, we must look to the particular contract to determine appellee's duty to indemnify. In the case sub judice, the indemnity provision at issue provides:

> The Agent agrees to indemnify and save [appellant] harmless from all loss, expense, cost and liability resulting from unauthorized acts or transactions by said Agent or any other persons engaged or acting on the Agent's behalf.

{¶ 18} Indemnity agreements must be interpreted in the same manner as other contracts. See *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 240, 513 N.E.2d 253.

> The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used. See *Cleveland Window Glass & Door Co. v. National Surety Co.* (1928), 118 Ohio St. 414, 161 N.E. 280. All words used must be taken in their ordinary and popular sense, *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 47, 29 OBR 393, 396, 505 N.E.2d 264, 267, and "[w]hen a * * * [writing] is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which * * * [it] naturally presents." *Lawler v. Burt* (1857), 7 Ohio St. 340, 350.

Id. at 240–241, 513 N.E.2d 253. "When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified instances, and it is determined that the exceptions do not pertain, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement. *Allen v. Standard Oil Co.* (1982), 2 Ohio St.3d 122, 2 OBR 671, 443 N.E.2d 497, paragraph one of the syllabus." Id. at 241, 513 N.E.2d 253.

{¶ 19} The central issue in this case is whether appellant's settlement with the Alleys resulted from appellee's (and appellee's agent's) unauthorized acts or transactions, or whether it resulted from appellant's independent knowing and intentional acts. Because both parties settled the claims in the Alley lawsuit, these issues have not been answered with certainty. However, the Ohio Supreme Court stated that when an indemnitee settles a claim, instead of litigating it, the indemnitee is entitled to indemnification if the indemnitee shows (1) that the indemnitee has given proper and timely notice to the party from whom indemnity is sought, (2) that the indemnitee was legally liable to respond to the settled claim, and (3) that the settlement was fair and reasonable. *Globe Indemn. Co. v. Schmitt* (1944), 142 Ohio St. 595, 27 O.O. 525, 53 N.E.2d 790. "Thus, in a settlement context under Ohio law, the party seeking indemnification must prove both that the right to indemnification applies to the claim and that such a remedy is appropriate in light of the factual requirements of *Globe*, supra. The initial inquiry is essentially a question of law, while the latter is usually a task for the

trier of fact." (Citations omitted.) *Blair v. Mann*, Lawrence App. No. 98CA35, 1999 WL 228265.

{¶ 20} In *Globe*, the indemnitee settled with the injured party and provided notice to the indemnitor. The indemnitor did not respond. The indemnitee proceeded with the settlement and then sought indemnification. The Ohio Supreme Court upheld the right to indemnity in a voluntary-settlement context when the indemnitee proves (1) that proper and timely notice was provided to the indemnitor, (2) "that he was legally liable to respond," and (3) that the settlement was fair and reasonable. Id. at paragraph four of the syllabus.

{¶ 21} In *Blair*, a commercial landlord sought indemnification from the renter for damages an individual sustained on the premises. The landlord settled with the injured party and then sought indemnification from the renter. The trial court denied the landlord's claim for indemnification because the landlord failed to prove that it was actually liable to the injured party and that the settlement was fair and reasonable. On appeal, the landlord argued that the trial court wrongly required it to prove its own negligence to be entitled to indemnity. This court disagreed and stated: "The general rule of indemnity in the settlement context requires the purported indemnitee to establish by a preponderance of the evidence that the indemnitee was actually liable to the [injured party]." We held that under *Globe*, the indemnitee must show that he was legally liable and could have been compelled to satisfy the claim. Id. at *3. Ultimately, this court determined that the landlord failed to show that the settlement was fair and reasonable.

{¶ 22} In the case at bar, appellant settled with the injured parties. The parties do not dispute that appellant provided proper notice and that the settlement is fair and reasonable. After our review of this matter, we believe that genuine issues of material fact remain as to whether appellant was actually liable to the injured parties and could have been compelled to satisfy those claims. The trial court appeared troubled that due to the parties' settlement of the underlying action, it could not determine appellant's or appellee's liabilities. However, when resolving an indemnity claim in a settlement context, a court is not limited to the allegations of the complaint. Instead, the court must determine the actual liability of the parties. In *St. Paul Ins. Co. v. Munoz* (Jan. 4, 1985), Lucas App. No. L–84–197, 1985 WL 8363, the court rejected the argument that the unproven allegations of a complaint can defeat a party's right to seek indemnification:

Such a proposition is clearly contrary to law. The right to indemnification is premised, not upon the mere allegations of the pleadings, but upon a party's determined liability to a plaintiff, arising from the active or primary negligence of another. The mere presence of allegations of active negligence is not sufficient to

preclude an action for indemnification. To the contrary, there must be a finding of active negligence on the part of a defendant to defeat a later suit by that defendant for indemnification. See, *Albers, Admr. v. Great Central Transport Corp.* (1945), 145 Ohio St. 129[, 30 O.O. 334, 60 N.E.2d 669]; and *Maryland Casualty Co. v. Frederick Co.* (1944), 142 Ohio St. 605[, 27 O.O. 529, 53 N.E.2d 795].

See also *Bank One v. Echo Acceptance Corp.* (S.D.Ohio 2007), 522 F.Supp.2d 959. Likewise, in *Am. Fid. & Cas. Co. v. Bennett* (Ohio App.1952), 125 N.E.2d 754, 758, the court rejected the argument that the indemnitee's settlement with the injured party precludes the right to seek indemnification:

> In the case now being considered, the lawsuits were settled before trial and there was no judicial determination of the alleged active negligence claimed against the subrogor by the third persons injured. A settlement of the lawsuits cannot be construed as an admission of the subrogor of the allegations of fact contained in the pleadings. Many considerations motivate a settlement other than the question of legal liability, as charged in the petition. In this case, for example, the fact that the subrogor considered himself secondarily liable because of the alleged negligence of defendant in omitting a cotter-pin from the right front wheel assembly, most probably was the reason for agreeing to a settlement.

Thus, in the case sub judice, even though the parties settled the Alley claims, appellant is not precluded from proving that it is actually liable to the injured parties and that it may look to appellee for indemnification. Appellee asserts that appellant is precluded from seeking indemnification under *Satterfield v. St. Elizabeth Health Ctr.*, 159 Ohio App.3d 616, 2005-Ohio-710, 824 N.E.2d 1047. In *Satterfield*, a fire occurred during a medical procedure. The injured plaintiff filed a medical-malpractice suit against the health center, the anesthesiologist, the Cleveland Clinic Foundation ("CCF"), and its employee. The health center then sought indemnification from the defendants. Subsequently, the health center settled with the plaintiff for $500,000. The plaintiff also agreed that regardless of the outcome at trial, she would not execute a judgment against the health center exceeding an additional $500,000. One defendant, CCF, also settled with the plaintiff. The plaintiff then dismissed the remaining claims. The defendants later requested summary judgment regarding the health center's indemnification claim. The trial court granted the motion and concluded that the health center was never found vicariously liable and, thus, could not prove its right to indemnification. The health center appealed and argued that genuine issues of material fact remained regarding its indemnification claim. The health center asserted that (1) the plaintiff's claim was based upon agency by estoppel, (2) it did not commit any independent acts of negligence, and (3) because its negligence

was secondary to the defendant's, a judicial determination of liability was not necessary for it to seek indemnification. The appellate court concluded that the health center could not establish its right to indemnification. The court determined that under implied indemnity principles, one of the co-defendants must be at fault in causing the plaintiff's injuries. Moreover, the court noted that the health center's cross-claim for indemnity asserted that if it should be found liable by virtue of principles of vicarious liability or primary or secondary negligence, that it is entitled to indemnity from such defendants who may be primarily liable to the plaintiffs. Id. at ¶ 13. The court stated that because the health center settled, "liability was never established." Id. at ¶ 14. The court thus concluded that the health center could not meet the term for indemnification in its cross-claim. The court additionally found that the health center failed to present evidence that the defendants were primarily liable and it was only secondarily liable.

{¶ 23} We believe that *Satterfield* is distinguishable from the instant case. *Satterfield* involved an implied indemnification claim that generally requires a finding of primary and secondary liability. In the case sub judice, however, the claim for indemnity is contractual, not implied. Under the parties' contract, appellee is obligated to hold appellant harmless for liability resulting from appellee's misconduct.

{¶ 24} In the case sub judice, we believe that genuine issues of material fact remain as to whether appellant's liability to the injured parties resulted from appellee's misconduct or appellant's own misconduct. If appellant's evidence is to be believed, this unfortunate situation stems from appellee's failure to provide to appellant the correct and necessary medical health-insurance questionnaire information. We reject appellee's contention that appellant's settlement with the Alleys, conduct that appellee chooses to characterize as knowing, intentional, separate, and independent conduct, somehow precludes appellant from enforcing its contractual right to seek indemnification from appellee. Appellant had valid and obvious reasons, all related to appellee's alleged misconduct, to agree to a settlement with the Alleys. Rather than be exposed to unanticipated and elevated financial risk predicated upon the inaccurate information that appellee supplied to appellant, appellant must have the opportunity to evaluate the situation and make an informed and financially responsible decision. In other words, appellee's actions and appellant's actions were not separate and independent of one another, but, rather, were inextricably intertwined.

{¶ 25} Once again, when resolving an indemnity claim in a settlement context, courts must determine the actual liability of the parties and whether the settlement was fair and reasonable. Therefore, at this juncture, we do not believe that summary judgment was appropriate.

{¶ 26} Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error, reverse the trial court's judgment, and remand the matter for further proceedings consistent with this opinion.

Judgment accordingly.

KLINE, P.J., and TYACK, J., concur.

G. GARY TYACK, J., retired, of the Tenth Appellate District, sitting by assignment.