[Cite as *Total Quality Logistics, L.L.C. v. Am. Trucking, Inc.*, 2024-Ohio-5634.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | CASE NO. CA2024-07-054 |
| Appellee, | : | |
| | : | O P I N I O N<br>12/2/2024 |
| - vs - | : | |
| | : | |
| AMERICAN TRUCKING, INC., | : | |
| Appellant. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2022 CVH 00836

Giles & Harper, LLC, and Brian T. Giles, for appellee.

Barron, Peck, Bennie & Schlemmer, and Steven C. Davis, for appellant.

**M. POWELL, J.**

{¶ 1} Appellant, American Trucking Inc, ("American"), appeals the decision of the Clermont County Court of Common Pleas granting summary judgment in favor of appellee, Total Quality, Logistics, LLC ("TQL"). For the reasons stated below, we affirm the judgment of the trial court.

{¶ 2} TQL is a freight broker that facilitates the transportation of freight for its

customers. American is a freight company that transports goods in interstate commerce. On or about January 28, 2020, TQL and American entered into a Broker/Carrier Agreement (the "Agreement"), whereby American agreed to provide third-party motor carrier services to TQL's customers in exchange for payment.

{¶ 3} The Agreement included the following provisions:

4. **COMPENSATION.** . . .

. . .

(g).  Notwithstanding any other provision in this Agreement to the contrary, [TQL] may offset against [AMERICAN]'s pending invoices for any amounts due to [TQL], including, without limitation, those arising from or related to cargo claims, [AMERICAN]'s breach of this Agreement, or [AMERICAN]'s indemnity obligations to [TQL] or CUSTOMERS.

. . .

8.  **CARGO LIABILITY AND CLAIMS.**  . . . [AMERICAN] is fully responsible and liable for the freight once in possession of it, and the trailer(s) is loaded, even partially, regardless of whether a bill of lading has been issued, signed, or delivered to [AMERICAN].   [AMERICAN]'s responsibility and liability shall continue until proper and timely delivery of the shipment to the consignee and the consignee signs the bill of lading or delivery receipt evidencing successful delivery . . .

. . .

10.  **INDEMNIFICATION.**  [AMERICAN] agrees to defend, indemnify, and hold [TQL] and CUSTOMERS harmless from and against any and all claims or liability (including, without limitation Workers' Compensation claims), arising out of or in any way related to [AMERICAN]'s negligence, willful misconduct acts, omissions, or performance or failure to perform under this Agreement, including, without limitation, claims or liability for cargo loss and damage, theft, delay, damage to property, and bodily injury and/or death . . .

. . .

- 2 -

22. **GENERAL [AMERICAN] DUTIES**. . . .

. . .

d. [AMERICAN] is responsible for any damage or loss to the product, shipment, or its packaging, and any and all shortages, from the time the shipment, or any portion thereof first comes into [AMERICAN]'s possession or control at pickup, until the shipment is no longer in [AMERICAN]'s possession or control at delivery.

. . .

23. **[AMERICAN] DUTIES FOR REFRIGERATED LOADS**. . . .

. . .

e. [AMERICAN] shall continuously maintain the temperature noted on [TQL]'s Rate Confirmation from pickup at shipper until delivery at receiver. [AMERICAN] shall not, at any time, set reefer on start/stop, cycle, or any other non-continuous temperature setting unless otherwise notified in writing by [TQL]. [AMERICAN] shall contact [TQL] immediately in the event of any problems including, without limitation, out-of-temperature condition, equipment malfunction accident, or delay.

{¶ 4} On July 9, 2021, TQL hired American to deliver a load of frozen pies. The "Rate Confirmation," a document containing details on the load, issued by TQL to American provided that American was to pick up the pies from the shipper in Worcester, Massachusetts on July 9, 2021 between 8 a.m. and 3 p.m. and deliver them to the consignee in York, Pennsylvania on the same day by 7 p.m. The Rate Confirmation further provided that the pies be maintained at a temperature of -10F.

{¶ 5} An American driver picked up the pies as scheduled. However, the driver encountered a prolonged delay due to a traffic accident on an interstate highway. As a result, the load did not arrive at consignee's facility on July 9, 2021 until approximately an

hour past the scheduled delivery time. Upon arrival, the American driver was directed to wait in a parking lot. After waiting several hours, the consignee declined to accept the pies because of American's late arrival and advised the American driver to leave the premises.

{¶ 6} Thereafter, the delivery of the pies was rescheduled multiple times until July 15, 2021. On that date, however, the consignee rejected delivery because the pulp temperature of the pies was between 50.3F and 60.2F, well above the specified -10F set forth in the Rate Confirmation. TQL's customer subsequently submitted a claim to TQL for the spoiled pies in the amount of $50,396. TQL paid and took an assignment of the customer's claim. Consistent with paragraph 4(g) of the Agreement, TQL then offset the claim with open invoices of American, and TQL demanded the balance of $30,896 from American to pay for the spoiled pies. American refused to pay TQL.

{¶ 7} TQL filed a complaint against American in the Clermont County Common Pleas Court asserting claims for breach of contract, unjust enrichment, quantum meruit, damages under the Carmack Amendment, and breach of bailment. TQL's breach of contract claim alleged that American had breached the Agreement by failing to deliver the pies on time (i.e., by 7 p.m. on July 9, 2021) and by failing to maintain the pies at the specified temperature of -10F. American answered and counterclaimed against TQL for breach of contract and unjust enrichment.

{¶ 8} TQL later filed a motion for summary judgment on its claims and American's counterclaims. TQL's motion for summary judgment asserted that there were no genuine issues of material fact that American had breached the Agreement by failing to deliver the pies on time, to maintain the pies at the specified temperature, and to indemnify TQL for the claim it had paid. American filed a memorandum in opposition to TQL's motion for summary judgment but only addressed TQL's argument related to the untimely delivery

of the pies. American did not address, argue, or submit any summary judgment evidence related to TQL's claim that American failed to maintain the pies at the temperature specified by the Rate Confirmation.

{¶ 9} The trial court granted summary judgment in TQL's favor on its breach of contract claim and American's counterclaims. Although the trial court found there were genuine issues of material fact related to whether American's arrival at the consignee's facility approximately an hour later than the time specified in the Rate Confirmation was a material breach of the Agreement, it found no genuine issues of material fact related to American's failure to maintain the pies at the specified temperature, making summary judgment proper.

{¶ 10} American appeals the trial court's decision, raising a single assignment of error.

{¶ 11} FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN ITS DECISION AND ENTRY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

{¶ 12} American argues the trial court erred in granting TQL summary judgment because the issues of timely delivery and the pie temperatures are not separate and independent. Stated differently, American contends that whether it observed its contractual obligations to TQL, including maintaining the pies at a temperature of -10F, must be determined as of the time it first arrived at the consignee's premises with the pies on July 9, 2021.

{¶ 13} Under Ohio Rule of Civil Procedure 56, a trial court may grant summary judgment when, "there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in

that party's favor." *Total Quality Logistics, L.L.C. v. JK & R Express*, L.L.C., 2022-Ohio-3969, ¶ 17 (12th Dist.). Trial courts should hesitatingly grant summary judgment, giving the non-moving party all benefits of doubt. *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992).

{¶ 14} The unsupported assertion by the moving party that the non-moving party has no evidence to prove its case is not sufficient ground for the trial court to grant summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107 (1996). However, if the moving party fulfills its burden and the non-moving party presents no evidence to support the merits of its case, summary judgment is proper. *Welco Indus.* at 346, citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d. 108, paragraph three of the syllabus (1991). "Mere speculation is insufficient to create a genuine issue of material fact to avoid summary judgment." *Fontain v. H&R Cincy Properties*, LLC, 2022-Ohio-1000, ¶ 67 (12th Dist.).

{¶ 15} The granting or denial of summary judgment is reviewed on a de novo basis, and appellate courts consider the same standard as the trial court. *Holtrey v. Wiedeman*, 2023-Ohio-2440, ¶ 12 (12th Dist.).

{¶ 16} Turning to the applicable law in this case, we have previously observed that "[p]arties 'have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced.'" *Godoy v. Total Quality Logistics*, *LLC,* 2023-Ohio-4585, ¶ 41 (12th Dist.), quoting *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36 (1987). A common contractual provision is an indemnity provision which expresses "the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 240 (1987).

{¶ 17} Here, there is no doubt that the consignee declined to accept the pies on July

9, 2021 due to American's driver's late arrival. American suggests that the consignee unjustifiably refused delivery of the pies on July 9, 2021 because the attempted delivery was only an hour late, but this is a matter between the consignee and American that does not involve TQL.

{¶ 18} Regardless, the consignee's initial refusal to accept the pies did not in any way modify American's contractual obligations under the Agreement or excuse its subsequent failure to continue observing them. Paragraph 8 of the Agreement is clear that American was responsible for the pies once loaded onto its truck and remained responsible until delivery and the consignee either signed the bill of lading or provided American with a delivery receipt. Paragraph 22(d) of the Agreement further placed liability for damage or loss to the pies upon American until the pies were "no longer in [American's] possession or control at delivery."

{¶ 19} It therefore did not matter who was at fault for the initial rejection of the pies; the Agreement stated that until American no longer possessed the pies, it had a duty to maintain the pies at the proper temperature. American clearly did not. As a result, because TQL acquired its customer's claim for the spoiled pies, TQL has the right to pursue reimbursement from American under the indemnity clause, Paragraph 10, of the Agreement.

{¶ 20} We have considered similar circumstances before. *See generally*, *Godoy*, 2023-Ohio-4585. There, a delivery of ice cream, also coordinated by TQL, was rejected after it arrived at its destination with a temperature above that set in the rate confirmation. We affirmed the propriety of summary judgment in TQL's favor after construing an agreement with provisions identical to those in this case. *Id*. at ¶38, 73. We held that under the contract, Godoy, the carrier, had:

> the duty to take care of the cargo such that he could be

blamed for any loss or damage, whether or not he was the cause or at fault. Godoy was entirely and solely responsible for the ice cream from the time it was loaded until it was successfully delivered. As a matter of law, then, Godoy was contractually responsible for any loss or damage to the ice cream.

*Id.* at ¶40.

**{¶ 21}** The reasoning in *Godoy* applies to American in this case. Whether or not American was at fault for failing to arrive at the consignee's facility by 7 p.m. on July 9, 2021 and the consignee was justified in declining to accept the pies on that date, American was, like Godoy, contractually responsible for any loss or damage to the pies, including spoilation due to improper temperatures, until the consignee signed the bill of lading or delivery receipt. TQL therefore had the right to indemnification from American under the Agreement.

**{¶ 22}** As a result of the foregoing, American's sole assignment of error is overruled.

**{¶ 23}** Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.