OPINION *Page 2 
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, William Jeffers, appeals the decision of the Belmont County Court of Common Pleas that found him in civil contempt, but allowed him to purge that contempt if he paid a lump sum judgment of $3025.17 plus interest at 8% per annum to Defendant-Appellee, Sherri Jeffers. On appeal, William argues that the trial court erred in finding him in contempt and arriving at the rate of interest to be paid on the judgment to purge him of the contempt. However, the record clearly supports the trial court's finding of contempt and the trial court imposed the statutory interest rate. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 2} William and Sherri were divorced in a decree entered on September 12, 2006. At the time of the divorce, William had income tax liabilities from a prior year when he had failed to pay a self-employment tax. The decree ordered that William assume that obligation and hold Sherri harmless on that obligation. If he did not do so, the court retained jurisdiction to issue sanctions against William.
 {¶ 3} In May 2007, Sherri was notified that the IRS was going to begin garnishing her wages to pay for William's outstanding tax obligation. It also applied a tax refund she was owed to William's outstanding tax obligation. Sherri filed a motion to show cause why William should not be held in contempt for violating the divorce decree because of his failure to hold her harmless on that tax obligation. After a hearing, the trial court found William in civil contempt and allowed him to purge the contempt through the payment of a lump sum judgment to Sherri in the amount of $3,025.17 plus interest at the amount of 8% per annum from June 11, 2007.
 {¶ 4} William timely appealed the trial court's decision and ordered that a transcript of the contempt hearing be prepared. Unfortunately, the recording device had malfunctioned during the contempt hearing. After a proper App. R. 9(C) motion, the trial reconstructed the evidence for this court in transcript form.
 Contempt *Page 3 {¶ 5} In his first of two assignments of error, William argues:
 {¶ 6} "The trial court erred in finding the Appellant in contempt because the Appellant is not guilty of contempt under Ohio Revised Code 2705.02."
 {¶ 7} Contempt proceedings can be described primarily as either civil or criminal, although the proceedings themselves are sui generis.Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253. Civil and criminal contempt proceedings can be distinguished by the purpose and character of the punishment meted out. Carroll v. Detty (1996),113 Ohio App.3d 708, 711. In civil contempt, the purpose of the punishment is to coerce the contemnor to obey a judicial order for the benefit of a third party. Id. In civil contempt, the, "contemnor is said to carry the keys of his prison in his own pocket * * * [citation omitted] since he will be freed if he agrees to do as ordered." Pugh v. Pugh (1984),15 Ohio St.3d 136, 139, quoting Brown at 253. Because civil contempt sanctions are only conditional sanctions, a civil contempt conviction must provide a means for the contemnor to purge his contempt. State v. Kilbane
(1980), 61 Ohio St.2d 201, 206-207; Carroll at 712.
 {¶ 8} On the other hand, criminal contempt sentences "are punitive in nature and are designed to vindicate the authority of the court [citations omitted]." Kilbane at 205. Criminal contempt sentences are also "usually characterized by an unconditional prison sentence."Brown at 254.
 {¶ 9} In this case, the trial court found William in civil contempt of court since the purpose of the contempt finding was to benefit Sherri and the trial court gave William the opportunity to purge.
 {¶ 10} To find civil contempt, a trial court needs only to do so by clear and convincing evidence. Carroll at 711. An appellate court will not reverse a finding of contempt by a trial court unless that court abused its discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11. An abuse of discretion involves more than an error of judgment; it implies that the court's attitude is unreasonable, unconscionable, or arbitrary. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} In this case, the parties' divorce decree provided, in pertinent part, as *Page 4 
follows:
 {¶ 12} "It is ordered that the Plaintiff shall assume and hold harmless the Defendant on all predetermined delinquent State and Federal income tax acknowledging that said indebtedness cannot be discharged in bankruptcy. The Plaintiff's failure to hold harmless the Defendant with respect to said tax obligation is subject to this court's continued jurisdiction to issue sanctions against the Plaintiff. It is ordered that the Defendant shall cooperate with the Plaintiff to negotiate a reduction in said tax burden with respect to penalties and interest."
 {¶ 13} The evidence presented at the hearing on Sherri's motion for contempt showed that the IRS garnished Sherri's wages because of an income tax obligation that William incurred during the course of the marriage. William acknowledges that this violated the terms of the divorce decree, but believes that he cannot be held in contempt for two reasons: 1) Sherri's failure to cooperate with him in reducing his tax burden and 2) his good faith belief that his tax obligation had been discharged in bankruptcy.
 {¶ 14} William's first argument is essentially that Sherri cannot complain about his failure to resolve his preexisting tax issues since she failed to cooperate with him in reducing the amount of his outstanding tax obligation. William is, thus, arguing that Sherri cannot enforce the order through the court's contempt powers since she has unclean hands.
 {¶ 15} R.C. 3105.011 states that a judge in a domestic relations action has "full equitable powers * * * appropriate to the determination of all domestic relations matters." An equitable defense can be raised against a statutory remedy, and thus the equitable doctrine of unclean hands can be employed as a defense where appropriate in a divorce action. Miller v. Miller (1993), 92 Ohio App.3d 340, 346-347. However, William bore the burden of proving this defense by a preponderance of the evidence. Rinehart v. Rinehart (1993), 87 Ohio App.3d 325, 328.
 {¶ 16} In his brief, William acknowledges that "the record does not indicate any evidence was presented that the Defendant fulfilled her obligation to assist the Appellant in negotiating a reduction in the tax burden," however, it was William's burden to *Page 5 
introduce evidence supporting this defense to the contempt action and he did not meet that burden. Thus, even if the doctrine of unclean hands applied to this type of situation, William has failed to demonstrate that defense in this case. Therefore, his argument regarding Sherri's cooperation is meritless.
 {¶ 17} William next argues that he had a good faith belief that his tax obligation had been discharged in bankruptcy, since he had filed for bankruptcy and his bankruptcy attorney had told him as much. William compares this situation to the one in Cassidy v. Cassidy, 4th Dist. No. 03CA721, 2005-Ohio-3199. In that case, the trial court found Mr. Cassidy in contempt for failing to pay to Mrs. Cassidy certain expenses he was ordered to pay in the parties' divorce. The appellate court noted that certain financial obligations, such as spousal support and child support, are not dischargeable in bankruptcy. Id. at ¶ 22. However, Mr. Cassidy had testified that these debts were actually discharged by the bankruptcy court. Id. at ¶ 23. The Fourth District decided to remand the case back to the trial court because it did not describe in its decision why it found that the obligation which was the subject of the contempt order had not been discharged in bankruptcy. Id. at ¶ 24. This remand for clarification was to see if the debt had actually been discharged, not whether the husband's good faith belief that the debt was discharged was a defense to the contempt action.
 {¶ 18} This case presents us with a different situation than the one in Cassidy. Here, the underlying financial obligation which William believed had been discharged was a tax obligation owed to the federal government because William had not paid his self-employment taxes. This is a financial obligation which is not dischargeable in bankruptcy under any circumstances. 11 U.S.C. 523(a)(1). Moreover, William agreed to hold Sherri harmless on that tax obligation. Thus, he has the duty to protect Sherri from any action to enforce that obligation, even if the obligation had actually been discharged. The fact that William has gone through the bankruptcy process does not affect this tax obligation.
 {¶ 19} Furthermore, the Ohio Supreme Court has held that a contemnor's belief that he was acting innocently is not a defense to a civil contempt charge. "The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful *Page 6 
orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." Windham Bank v. Tomaszczyk (1971),27 Ohio St.2d 55, paragraph three of the syllabus.
 {¶ 20} In this case, the record clearly demonstrates that William violated the trial court's order in the divorce decree and he failed to prove any defense to his contempt. Accordingly, the trial court did not abuse its discretion when it found William in contempt of court and this assignment of error is meritless.
 Sanction {¶ 21} In his second assignment of error, William argues:
 {¶ 22} "The court erred in granting a lump sum judgment in favor of Appellee against the Appellant in the amount of $3025.17, plus interest at the rate of 8% per annum from July [sic] 11, 2007."
 {¶ 23} Here, William does not challenge either the amount of judgment or the date from which interest should be calculated; his only challenge is to the interest rate which the trial court ordered him to pay.
 {¶ 24} William's argument in this regard is frivolous. Interest on a lump sum judgment arising from a finding of contempt is calculated pursuant to R.C. 1343.03. See Hasch v. Hasch, 3d Dist. No. 4-05-15, 2006-Ohio-0049, at ¶ 8. R.C. 1343.03 states that the interest rate on "all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct" shall be "determined pursuant to section 5703.47 of the Revised Code." R.C. 5703.47 provides that the federal short term interest rate shall be determined on October 15 of each year. The appropriate interest rate for judgments is the federal short term interest rate rounded to the nearest whole number plus three per cent. R.C. 5703.47. This number shall then be the interest rate per annum used during the following calendar year. Id. In 2007, the date of the judgment in this case, the interest rate calculated under this method was 8%. Oct. 16, 2006, Adm. Journal Entry of Tax Commr. Thus, the trial court ordered William to pay the interest rate prescribed by R.C. 1343.03. William's second assignment of error is meritless.
 Conclusion *Page 7 {¶ 25} William challenges both the trial court's finding of contempt and the condition that the trial court gave him for purging that contempt. However, all of William's assignments of error are meritless. Accordingly, the judgment of the trial court is affirmed.
 Donofrio, J., concurs. Waite, J., concurs. *Page 1